# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### BROWARD DIVISION

**ROSE WISE**
          **Plaintiff,**
                               **CASE NO: 15-CV-60686-DPG**

vs.

**CITY OF LAUDERHILL**
          **Defendants.**

_____/

## AMENDED NOTICE OF FILING AFFIDAVIT IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Plaintiff, **ROSE WISE**, (collectively referred to hereafter as "Plaintiff"), hereby gives notice of filing the following document(s) with the court:

1. Affidavit in Opposition to Motion for Summary Judgment

Respectfully submitted,

**The Law Office of Ray Garcia, P.A.**
14850 SW 22nd Street, Suite 204
Miami, Florida 33185
Telephone: (305) 227-4030
Facsimile: (305) 223-9811

By: /s/ Ray Garcia
Ray Garcia, Esq.
Florida Bar No. 115850
rgarcia@raygarcialaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on JUNE 13, 2016, I electronically filed the foregoing documents with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified in the Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing System:

By: */s/Ray Garcia*
Ray Garcia, Esq.

## SERVICE LIST
### (Case No.: 15-CV-60686-DPG)

**Douglas Todd Marx, Esq.**
Dmarx@waldmanlawfirm.com
Waldman Trigoboff Hildebrandt Marx
& Calnan, P.A.
500 East Broward Blvd.
Suite 1700
Fort Lauderdale, Florida 33394
Counsel for Defendant

**William Edward Calnan, Esq.**
wcalnan@waldmanlawfirm.com
Waldman Trigoboff Hildebrandt Marx
& Calnan, P.A.
500 East Broward Blvd.
Suite 1700
Fort Lauderdale, Florida 33394
Counsel for Defendant

**Ray Garcia, Esq.**
service@raygarcialaw.com
rgarcia@raygarcialaw.com
The Law Office of Ray Garcia, P.A.
14850 SW 26 Street
Suite 204
Miami, Florida 33185

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### BROWARD DIVISION

**ROSE WISE**
                    **Plaintiff,**                          **CASE NO: 15-CV-60686-DPG**

**vs.**

**CITY OF LAUDERHILL**
                    **Defendants.**
———————————————————/

## AFFIDAVIT IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

STATE OF FLORIDA          )
                          ) SS.
COUNTY OF BROWARD         )

BEFORE ME, the undersigned authority, personally appeared **ROSE WISE** who after being duly sworn, deposes and says:

1. I am over the age of 18 years and of sound and competent mind to execute this affidavit.

2. I am personally familiar and have first-hand knowledge of all the matters hereinafter stated.

3. I have carefully reviewed the City of Lauderhill's Motion for Summary Judgment and facts in this matter.

4. I have examined all records and documents I have kept concerning the matter herein.

5.  Based upon said examination, I state as follows: I am the owner of certain real property, located in the City of Lauderhill, Broward County, Florida with the following legal description:

> Lot 23, Block 219, CITY OF LAUDERHILL SECTION ONE, according to the Plat thereof, recorded in Plat Book 81, Page 4, of the Public Records of Broward County, Florida

6.  On or about 2004, there was a fire in my house that damaged the property described above. I made, and collected on, an insurance claim which paid to me an amount sufficient to effectuate repairs to the Property.

7.  On or about November, 2004, I attempted to pull a permit from the City of Lauderhill in order to effectuate the necessary repairs. However, the City of Lauderhill denied my request for a permit until I engaged a contractor. ( See Exhibit "1")

8.  I complied with the City of Lauderhill's requirement, engaged a contractor by the name of Crognale & Associates Construction, Inc., and obtained a permit. Pursuant to the permit, I had to begin work within ninety (90) days. On or about January, 2005, I began effectuating the necessary repairs to my house by tearing down and removing the damaged portions to the Property. The permit was not for a complete demolition of the property but for a partial demolition of the proeprty for the Roof only which is what was substantially damaged. However several other areas of the property were intact. ( See Exhibit "2")

9. Between February, 2005, and May, 2005, several inspections were conducted by the City of Lauderhill. Each inspection resulted in me having to remove additional portions to the Property described above. However, the May, 2005, inspection was cancelled as the City of Lauderhill had declared the Property as an "unsafe structure", and referred this matter to the Broward County Unsafe Structure Board. Attached here to as exhibit "3" is a copy of the transcript of the August 15, 2005 hearing whereby it is clear as to the confusing whereby the City of Lauderhill is discussing a complete demolition of the property, instead of a partial demolition for the damaged area. This is the first time that I am notified of this assertion, however on page 8, I explain to the City that It is only a Partial demolition and there response "Okay, Okay".

10. On or about July 5, 2005, the Broward County Unsafe Structure Board issued a Notice of Violation for Unsafe Structures indicating that the Property met the 50% criteria for demolition. However, the letter also provided me ten (10) days within which to obtain a new permit to continue my repairs to the Property.

11. On or about July 18, 2005, the matter went before the Broward County Unsafe Structure Board for a hearing. The Broward County Unsafe Structure Board issued an Order which provided me until August 18, 2005, within which to renew my demolition permit as the old one had expired. Additionally, the Broward County Unsafe Structure Board granted me until September 15, 2005, to submit plans for reconstruction. On or about August 15, 2005, I applied to renew my permit with City of Lauderhill. However, City of Lauderhill denied the permit

stating that my most recent permit had expired for over five (5) months. The City of Lauderhill cited a false reason for denying the permit, as the City of Lauderhill's own records demonstrated that I complied with all requirements necessary to keep my permit active.

12. I requested that the City of Lauderhill reconsider its denial based upon the facts that I had complied with all requirements necessary to keep my permit active. However, the City of Lauderhill summarily denied my request, without good cause, or reason. As a result of the City of Lauderhill's wrongful denial of my request for a permit, the Broward County Unsafe Structure Board proceeded with demolishing my house.

13. During the time that my house was declared an "unsafe structure", the City of Lauderhill's Police Department utilized the Property described above for a training ground for its SWAT team. I had not consented to the City of Lauderhill's use of the property for that purpose, nor was I compensated for the trespass by the City of Lauderhill.

14. Additionally, during the time that my house was declared an "unsafe structure", the City of Lauderhill had plans to construct a street wall on 44th Street. This wall would have encroached on my property. City of Lauderhill's denial of my application for permits was made with ulterior motives, to wit: utilizing the my property as a SWAT training ground, and circumventing having to go through an eminent domain action to compensate me for use of her property for the 44th

4

Street Wall project. City of Lauderhill's actions were intentional, wanton and willful, and made with total disregard of my rights to receive just compensation in violation of the Florida and United States Constitution.

15. The City of Lauderhill entered upon the property described above in 2004 on several occasion taking much of my materials that I had for construction and rebuilding of my home. They took shingles, tiles, pavers furniture and cinder blocks. They also entered upon my property numerous times after 2004.

16. One time, they came into my property without any authority or right and filled my Koi ponds with sand killing all of my koi fish. Another time, the City of Lauderhill removed my monkey bars from my property. On several occasions, at least three (3) or four (4) times, the City of Lauderhill's police department used my home for police training. Additionally, while, they were building the wall along the backside of my property, the City of Lauderhill would use my property to park their trucks there, use the property to keep their materials, have lunch and they inversely condemn my property for their own use.

17. As far as specific dates of when the inverse condemnation took place, it is my position that by the virtue of the city refusing to grant me the necessary permits to complete the building of the home and in essence the City of Lauderhill has taken the home from me. There was also a motive to do that because on several occasion at least three (3) or four (4) times, the City of Lauderhill Police Department used my home for police training.

18. A neighbor of mine, Laura Thompson contacted me and advised me that the City of Lauderhill Police Department was using my property for training exercises.

The City of Lauderhill Police Department told Laura Thompson that the City of Lauderhill owned this property.

19. I showed up to the property and spoke with the officer in charge. I proceeded to call the police who referred me to the City of Lauderhill. The person on the phone from the City of Lauderhill asked to speak to the office in charge. They spoke and immediately, the police offer and other officers vacated the property

FURTHER AFFIANT SAYETH NOT.

ROSE WISE

SWORN TO AND SUBSCRIBED that the foregoing instrument was acknowledged before me this *13th* day of *June*, 2016, by **ROSE WISE**, who is personally known to me or produced *MD # W-200-744-587-32-0* as identification.

BRITTNEY ADAMS
Notary Public - State of Florida
Commission # FF 964858
My Comm. Expires Mar 27, 2020
Bonded through National Notary Assn.

Notary Public, State at Large
My Commission Expires:

7

# EXHIBIT 1



| City of Lauderhill | Phone 954-730-3060 |
|---|---|
| Fire Prevention/Building Division | Fax    954-730-3071 |
| 2000 City Hall Drive | |
| Lauderhill, Florida  33313 | **CRITIQUE** |

Plan Review

PROJECT/OWNER   Rose Wise           DATE 11/60/04

ADDRESS   8080 NW 44 CT           GROUP _____ TYPE _____

CONTRACTOR _____           RES. _____ COM. _____

CONTACT PERSON _____           *Original May Be Duplicated but not remove from the Department.*

CONTACT CALLED ____ YES ____ No ____ Time ____

PLAN REVIEW ___ 1    2    3    4    5

CONTROL/PERMIT NUMBER 04 410066

CORRECTIONS REQUIRED

**STRUCTURAL**
Sean Flanagan
954-714-3111

**PLUMBING**
Hugh Howell
954-714-3112

**FIRE**
Marc Celetti
954-730-3057
Mark Falzone
954-730-3058
Tim Hancock
954-714-3110
Bob Elmore
954-714-3114

**ELECTRICAL**
Bob Clarke
954-730-3063

**MECHANIAL**
Mike Beck
954-730-3060

**ZONING**
Bob Schankweiler
954-730-3050

— Due to the hazardous conditions of this property, particularly the Roof truss system, it is unsafe for anyone to work on this structure who is not licensed and insured.

— You need to hire a contractor.

30 day to complete work

Permit Rejected

Reason
Need contractor to do work due to Hazard

# EXHIBIT 2



# CITY OF LAUDERHILL

2000 CITY HALL DRIVE - LAUDERHILL, FL 33313
TELEPHONE 730-3060   FAX 730-3071

DATE 11-03-04

## BUILDING PERMIT

THE UNDERSIGNED APPLICANT DOES HEREBY request that a building permit be issued on the basis of and subject to the herein set forth information as supplemented by herewith submitted building plans and specifications, with the understanding that all Federal, State, County and City laws, rules and regulations shall be complied with whether specified in this application and accompanying plans or not.

**FAILURE TO COMPLY WITH THE MECHANICS LIEN LAW CAN RESULT IN THE PROPERTY OWNER PAYING TWICE FOR BUILDING IMPROVEMENTS**

Permit expires if construction has not begun within 180 days. Plans must be on job before inspection will be made. At least 1 inspection to be made every 90 days or permit expires. Obtain certificate of occupancy from Dept. before using completed building.

NOTICE: In addition to the requirements of this permit, there may be additional restrictions applicable to this property that may be found in the public records of this county, and there may be additional permits required from other governmental entities such as water management districts, state agencies, or federal agencies.

NAME _Rosi Wise_
ADDRESS _8080 NW 44th ct_
_Lauderhill Fla_
PHONE _954-628-3666_
FOLIO NUMBER _494116016400_
LOT _____ BLOCK _____
SUBDIVISION _____
JOB ADDRESS _8080 NW 44th ct_

PERMIT # _04110066._
_DEMO·ONLy_

### CONTRACTOR

STATE CERTIFICATION # _____
CERTIFICATE OF COMPETENCY # _____
STATE REGISTRATION # _____
COMPANY NAME _____
ADDRESS _____

PHONE _____

### ARCHITECT/ENGINEER

LICENSE # AND CLASS _____
NAME _____
ADDRESS _____

PHONE _____

ZONING _____
GROUP OCC. _____
TYPE CONST. _____

| THIS PERMIT INCLUDES: | ESTIMATED VALUE | FEE |
|---|---|---|
| BUILDING | $ | $ |
| FENCE | | |
| SIDEWALK | | |
| POOL | | |
| ENCLOSURE | | |
| ROOF | | |
| PAVING | | |
| OTHER Demolition | 500.00 | 25.00 |
| PLUMBING | | |
| MECHANICAL | | |
| ELECTRICAL | | 30.00 |
| FIRE PROTECTION | | |
| COUNTY FEE | | |
| TOTAL AMOUNT DUE $ | $ 500 | |

NO. STORIES _____
FT. PER FL. _____
NO. UNITS _____

PARKING _____
LOWEST FINISH FL. ELEVATION _____
FLOOD ZONE _____

**OWNER'S AFFIDAVIT: I certify that all the foregoing information is accurate and that all work will be done in compliance with all applicable laws regulating construction and zoning.**

SIGNATURE _R. M. Wise_
OWNER'S SIGNATURE

DATE _____

SIGNATURE _____
CONTRACTOR
DATE _____

NOTARY as to Owner or Agent
MY COMMISSION EXPIRES: _____

NOTARY as to Contractor
MY COMMISSION EXPIRES: _____

JOB DESCRIPTION: _Demolition from fire - Roof_
_ONLY_

CONDITIONS UNDER WHICH APPROVED _____

| CONNECTION FEE | | APPLICATION APPROVAL |
|---|---|---|
| PAID | | This permit does not become valid until signed by an authorized representative of the Lauderhill Department and all fees paid. |
| INIT. | | BY _____ |
| | | BUILDING OFFICIAL |

TYPE OF OWNERSHIP

CONTRACTOR LICENSED

| | APPROVED | DISAPPROVED | | REASON |
|---|---|---|---|---|
| STRUCTURAL | | DT | 11/10/04 | |
| PLUMBING | | | | |
| ELECTRICAL | RC | | 11-10-04 | |

WHITE — FILE COPY     YELLOW — APPLICANT'S COPY

EXHIBIT 3

BUILDING CODE SERVICES DIVISION
BROWARD UNSAFE STRUCTURES BOARD

TRANSCRIPT
OF
AGENDA ITEM

8080 NW 44TH COURT
CITY OF LAUDERHILL

955 South Federal Highway, Fourth Floor
Fort Lauderdale, Florida
August 15, 2005
Monday, 4:00 P. M.

BOARD MEMBERS PRESENT:

THOMAS E. DRIGERT, CHAIRMAN
RODNEY GREEN
CINDY SHERR
WILLIAM CHARLAND
MARIA MOLINA

ALSO PRESENT (STAFF):

JOSEPH FAHEY
CARL KITCHNER, ESQUIRE,
FRED PERLMAN
DIANE JOHNSON

1      *   *   *   *   *   *   *   *   *   *   *

2     (Whereupon, the following proceedings were heard for

3  the address 8080 NW 44th Court, the City of Lauderhill:)

4     MR. FAHEY:  The case right now is page 5.  The address

5  is 8080 NW 44th Court.  It's in the City of Lauderhill.

6     The case you may recall.  Again, this case was before

7  you at our last meeting that went so long.  You may recall the

8  situation.

9     I believe in your book on page 2, I hope, there's a

10  copy of the Board order that was issued at the last meeting.

11     MS. JOHNSON:  Page 5.

12     MR. FAHEY:  It's page 5.  This is the order that was

13  proposed and adopted at that particular meeting.

14     We have representatives here from the City of

15  Lauderhill, and I'd like them to come up.  They have concerns

16  with the order, the timing that the Board permitted to resolve

17  this case, and if you'd like to come ahead up and explain the

18  situation and what your request is now.

19     This is case 05-0321, 8080 NW 24th Court in Lauderhill.

20  This gentleman is the attorney for the City of Lauderhill.  I

21  have that correct; right?

22     MR. HALL:  That's correct.

23     MR. FAHEY:  It's a burned out house that has been

24  sitting there for some period of time.  Nothing again has been

25  done with it and a blight on the neighborhood.

1          MR. HALL:  Good afternoon.  I'm Earl Hall.  I'm the

2    City Attorney for the City of Lauderhill.

3          THE COURT REPORTER:  Can you --

4          MR. HALL:  Earl Hall.

5          THE COURT REPORTER:  Earl Hall?

6          MR. HALL:  Yes, the City Attorney for the City of

7    Lauderhill.  This property originally burned down in 1997, and in

8    1998 she obtained her first permit.  To be very clear, she

9    arrived at City Hall this morning herself because of this hearing

10   date to ask for a demolition permit.  So I suspect if you had

11   given her sixty days, she would come in on the sixtieth day.  If

12   you had given her ninety days, it would have been the same thing.

13         This routine and this behavior has persisted in the

14   City now for seven years.  The residents have endured this

15   condition for the entire length of time, and I want to show

16   photographs of the condition, and no homeowner that's not

17   experienced in construction law could ever complete demolition

18   without hurting themselves or starting the improvements on this

19   property.

20         It's in horrendous condition that needs to be

21   rectified, and the City would like to move forward.  The Chief

22   Building Official, within his official capacity, denied her

23   request for the demolition permit this morning when she came in

24   on the day of the hearing, again to make a mockery of this Board

25   in the way that she's operating.

OFFICIAL REPORTING SERVICE

4

```
 1              I suspect that she would continue the same situation

 2    that she's executed for years now, and we have granted her, I

 3    believe, four different demolition permits over time.  The

 4    property is yet to be demolished, and all we're doing is

 5    perpetuating her assistance of delaying the inevitable, and we

 6    just ask that we just stop it and bring this matter to closure so

 7    that the City and the residents can move on.

 8              MS. WISE:  Can I just say something?

 9              CHAIRMAN DRIGERT:  Sure.

10              MS. WISE:  Okay.  You ordered me to get thirty days.

11    I called this lady several times and asked her for names of

12    people who was here that day to help me and so forth.  So now

13    they gave this letter.  Could you read it?

14              Now, I've been doing demolition.  I had workers out.

15    I got proof.  I started.  You gave me thirty days to do

16    demolition.

17              BOARD MEMBER SHERR:  To get a permit.

18              MS. WISE:  But we have a permit.  He refused to give

19    me a renewal.

20              MR. FAHEY:  It's a letter.  It's a short letter from

21    the City of Lauderhill.

22              Dear Ms. Wise, due to the fact that your project has

23    been under observation for approximately three years and your

24    most recent permit has expired for more than five months --

25              MS. WISE:  It hasn't.  I have demolition --
```

OFFICIAL REPORTING SERVI

1          MR. FAHEY:   -- the request for extension permit number

2     has been denied as per the Florida Building Code.

3          MS. WISE:  I have demolition proof.  This is personal.

4     I just don't want to go personal.

5          MR. FAHEY:  It's signed by the City Building Official,

6     Bob Clark.

7          MS. WISE:  Here you go.  The point is is that he just

8     stated that I have ninety days.  Every time I call --

9          BOARD MEMBER SHERR:   (inaudible) ninety days.

10         MS. WISE:  Well, no.  You don't understand.  When I

11    was here the last time, my permit, my permit was still good.  I

12    just didn't want to keep going over with you all about it.  My

13    permit was within the time period I had all these inspections.

14    Okay, now --

15         MR. CLARK:  My name is Bob Clark.

16         MS. WISE:  Can I just finish?

17         CHAIRMAN DRIGERT:  One at a time.  One person at a

18    time.  Excuse me.

19         MR. CLARK:  I would just like to have my name on the

20    record.

21         MS. WISE:  Okay.  Could I finish?

22         CHAIRMAN DRIGERT:  Just one person at a time.

23         MS. WISE:  Can I finish?

24         CHAIRMAN DRIGERT:  Let's not get out of hand.

25         MS. WISE:  You, this Board gave me thirty days to

6

1   complete a demolition.  I'm ready to complete my demolition.  I

2   called this man Shawn last week three times and ordered an

3   inspection to final my demolition.  He had some excuse.  Mr.

4   Clark isn't here, or your permit is not approved.

5          So I said to him, I have a history.  This is a history

6   of the inspection, meaning that my permit is still granted.  My

7   permit is still active.  I didn't have the reason to come and

8   hire a new permit.

9          So when I called him Thursday and he said you need to

10  renew or get a new permit, I said, Why?

11         So he said, Because no permit.

12         So guess what?  I went to go to apply for a new

13  permit, and he gave me this letter saying they're not giving me

14  no permit.

15         So he's taking what you all told me to do upon his-

16  self to not give me a permit.

17         CHAIRMAN DRIGERT:  Let's see that.

18         MS. WISE:  And I've been trying to do this for two

19  weeks.  I had to wait on insurance money.  That's when I was here

20  the last time.  It took me two weeks.  I'm sorry.

21         CHAIRMAN DRIGERT:  This thing happened in 1997.

22         MS. WISE:  No.

23         CHAIRMAN DRIGERT:  You can't tell me that --

24         MS. WISE:  The fire happened July 1.  That was the

25  long one.  That's been past.  This is the July 1 fire.


OFFICIAL REPORTING SERVICE  (954) 467-8204

1  complete a demolition.  I'm ready to complete my demolition.  I

2  called this man Shawn last week three times and ordered an

3  inspection to final my demolition.  He had some excuse.  Mr.

4  Clark isn't here, or your permit is not approved.

5            So I said to him, I have a history.  This is a history

6  of the inspection, meaning that my permit is still granted.  My

7  permit is still active.  I didn't have the reason to come and

8  hire a new permit.

9            So when I called him Thursday and he said you need to

10  renew or get a new permit, I said, Why?

11            So he said, Because no permit.

12            So guess what?  I went to go to apply for a new

13  permit, and he gave me this letter saying they're not giving me

14  no permit.

15            So he's taking what you all told me to do upon his-

16  self to not give me a permit.

17            CHAIRMAN DRIGERT:  Let's see that.

18            MS. WISE:  And I've been trying to do this for two

19  weeks.  I had to wait on insurance money.  That's when I was here

20  the last time.  It took me two weeks.  I'm sorry.

21            CHAIRMAN DRIGERT:  This thing happened in 1997.

22            MS. WISE:  No.

23            CHAIRMAN DRIGERT:  You can't tell me that --

24            MS. WISE:  The fire happened July 1.  That was the

25  long one.  That's been past.  This is the July 1 fire.

```
 1                    CHAIRMAN DRIGERT:  No, no, no.  Just relax.

 2                    MS. WISE:  Sir, you're not understanding.

 3                    CHAIRMAN DRIGERT:  1997 is when this fire took place?

 4                    MS. WISE:  No, no.

 5                    BOARD MEMBER SHERR:  There's two fires.

 6                    MS. WISE:  July 1.

 7                    MR. CLARK:  There have been two fires, ladies, ladies

 8    and gentlemen.

 9                    CHAIRMAN DRIGERT:  I'm trying to get clear; okay?

10                    MS. WISE:  I understand.

11                    CHAIRMAN DRIGERT:  But if everybody talks so fast, I

12    can't listen to everybody.

13                    MS. WISE:  I'm sorry.

14                    CHAIRMAN DRIGERT:  We're trying to get this resolved.

15                    MS. WISE:  I'm sorry.

16                    CHAIRMAN DRIGERT:  One person at a time.  Slowly,

17    please.

18                    MR. CLARK:  Okay.  The first, the first fire --

19                    CHAIRMAN DRIGERT:  I'm talking to her.

20                    MR. CLARK:  Okay.

21                    CHAIRMAN DRIGERT:  Do you mind?  Why don't you sit

22    down.  When I'm ready for you, you can come up; okay?

23                    MR. CLARK:  Okay.

24                    MS. WISE:  Thank you.  I'm sorry.  I get excited.  I'm

25    getting excited.
```

8

1            CHAIRMAN DRIGERT:  Okay.  Now, this shows that your

2    permit expired five months ago.

3            MS. WISE:  No.  Whenever you have an inspection, and

4    within that period of time -- I didn't know until last week if it

5    wasn't approved -- then your permit is considered over after

6    ninety days.

7            My last inspection was May the 25th.  That's what's on

8    there.  May, June, July, August 25 is ninety days.  It was in

9    that ninety days to get my final approval.  They came out.  They

10   would not even come out.

11           CHAIRMAN DRIGERT:  And you claim that it was turned

12   down before that, though.

13           MS. WISE:  Yeah, but they wouldn't come out for the

14   final because they already got a vendetta.

15           CHAIRMAN DRIGERT:  Well, I see the pictures.  They

16   couldn't do a final because it's not been demolished yet.

17           MS. WISE:  No, the house's final, only a partial

18   demolition, sir, partial.

19           CHAIRMAN DRIGERT:  Okay, okay.

20           MS. WISE:  It's partial.

21           CHAIRMAN DRIGERT:  Okay, thank you.

22           MS. WISE:  Okay.

23           CHAIRMAN DRIGERT:  You can sit down now.  Thank you.

24           MR. FAHEY:  Mr. Clark.

25           MR. CLARK:  I would just --

1              CHAIRMAN DRIGERT:  Who are you and what's this in

2      reference to?

3              MR. CLARK:  My name is Bob Clark.

4              CHAIRMAN DRIGERT:  And what are you, Mr. Clark?

5              MR. CLARK:  Building Official.

6              CHAIRMAN DRIGERT:  You're a Building Official for the

7      City of --   Okay.

8              MR. CLARK:  I will just start at the period of the

9      second permit, not the first.  There was a period in that first

10     permit which was very derogatory.  So when she applied for the

11     second permit, she was told she would not be issued a second

12     permit.  That permit would only be issued to a general

13     contractor, and a general contractor did come in and apply for

14     that permit.

15             The Florida Building Code states that the demolition

16     permit is for sixty days.  I went beyond that and gave her ninety

17     days for that permit.

18             CHAIRMAN DRIGERT:  Uh-huh.

19             MR. CLARK:  Nothing was done.  Now, if we do

20     inspections on a job, it's got to be a valid inspection before

21     the permit can be extended.  You don't just call because the day

22     is out and you need an extension on your permit.  You don't just

23     call and call up for an inspection and no work is done.  The work

24     is just sitting there.  It's got to be a valid permit.

25             CHAIRMAN DRIGERT:  I understand.  I understand

OFFICIAL REPORTING SERVICE  (954) 467-8204

10

1    exactly.

2              MR. CLARK:  If you look at her record, it states

3    everything there fail, fail, fail, fail, fail, and it failed

4    because nothing was done.

5              CHAIRMAN DRIGERT:  Right.  Okay.

6              MR. CLARK:  I'm going to ask the Chief Structural.

7              CHAIRMAN DRIGERT:  Thank you very much.

8              MR. FLANAGAN:  Shawn Flanagan.

9              THE COURT REPORTER:  Shawn Flanagan?

10             MR. FLANAGAN:  Shawn Flanagan, Structural Inspector,

11   City of Lauderhill.  I think you got the gist of the City --

12             CHAIRMAN DRIGERT:  Uh-huh.

13             MR. FLANAGAN:  -- from what Mr. Clark has said.  Just

14   to throw a couple dates at you, the permit was issued 12/10 of

15   '04, and as he said, we gave her another thirty days beyond the

16   sixty days that's allowed per the Building Code for demolition.

17   That ninety-day period ended in March.  I think you have a copy

18   of --

19             CHAIRMAN DRIGERT:  I've got some inspection dates, all

20   turn downs here.

21             MR. FLANAGAN:  Yes.  So you can see the history of

22   this permit.  I wasn't present at the last meeting here, but I

23   guess she was given thirty days to get everything back up to

24   snuff to where it needs to be.  The thirty days is today.

25             CHAIRMAN DRIGERT:  Right.

1          MR. FLANAGAN:  Today she comes in for the application

2    to extend the permit.  This other Code section is in our book for

3    Mr. Clark to follow, which pertains to his ability to grant that

4    or not, and he has decided not to grant that because of the

5    history --

6          CHAIRMAN DRIGERT:  Uh-huh.

7          MR. FLANAGAN:   -- of the job and the property.  So

8    that's about it.

9          MS. WISE:  Sir, can I speak?  Go ahead.  No, I didn't

10   know you was waiting.  You can go first.

11         MR. FLANAGAN:  This is Mr. Celetti, our Fire Marshall.

12   He's very familiar with the property.

13         CHAIRMAN DRIGERT:  Thank you.

14         FIRE MARSHAL CELETTI:  Just one

15   you up any longer.

16         THE COURT REPORTER:  Your name

17         FIRE MARSHAL CELETTI:  C-E-L-E-

18         THE COURT REPORTER:  Thank you.

19         FIRE MARSHAL CELETTI:  I'm Divi

20   Marshal.  I have oversight of the Building

21         Just a point of clarification, the original fire was

22   in '97.  She got a permit in '98, built it in '99.  It burned

23   again in 2004, and we're up to speed   So I just wanted to bring

24   some clarification.

25         CHAIRMAN DRIGERT:  We appreciate that.  That's what I

OFFICIAL REPORTING SERVICE  (954) 467-8204

1    was trying to get clarified.  I was a little bit (inaudible) on

2    it, and I appreciate that very much.

3         FIRE MARSHAL CELETTI:  Not a problem.

4         CHAIRMAN DRIGERT:  I think we both were, all were.

5         BOARD MEMBER SHERR:  Well, we were here last month

6    when she was here, the rest of us.

7         CHAIRMAN DRIGERT:  Oh, okay.

8         MS. WISE:  Can I just make some points?

9         CHAIRMAN DRIGERT:  Okay, briefly.

10        MS. WISE:  Okay.  If you look on there and you'll

11   notice that my inspection for the 6th, you'll notice on there that

12   I had called for an inspection only because what the last lady

13   said they was nitpicking.

14        When Shawn came out --  When the first person came

15   out, it was a Sunrise inspector.  So he had no idea what was

16   going on in the site.

17        CHAIRMAN DRIGERT:  Look ma'am.  See this picture?

18        MS. WISE:  Yeah, but that's not --

19        CHAIRMAN DRIGERT:  It's not demolished.

20        MS. WISE:  Can I show you the pictures, the recent

21   pictures, sir?

22        CHAIRMAN DRIGERT:  Here.

23        MS. WISE:  Can I show you a recent picture?

24        CHAIRMAN DRIGERT:  These are recent.

25        MS. WISE:  Anybody else on the Board have a concern?

1    I do have some recent pictures.  I do have some recent pictures.

2    Would you look at them?

3            CHAIRMAN DRIGERT:  Sure.

4            MS. WISE:  Thank you.  I have some pictures that I'm

5    sending right, sending right now to my insurance department, and

6    I do have a contractor that's waiting to do the repairs.

7            CHAIRMAN DRIGERT:  Just -- Are you demolitioning it

8    or are you repairing it?  What are you doing?

9            MS. WISE:  I'm doing, trying to do both.

10           CHAIRMAN DRIGERT:  You can't do both.  You can do one

11   or the other.

12           MS. WISE:  Excuse me.  Can you just hold that for a

13   minute.  Gosh, I realize that you --

14           It's a conspiracy going on here, and I know some,

15   somebody going, somebody here now that's really trying to get my

16   house because my neighbor doesn't want my house in the

17   neighborhood.

18           Let me tell you what the bottom line is.  I'm an ex-

19   felon, and my neighbor decided that I shouldn't be living in this

20   community.  For twenty years I've been there.  I was the third

21   Black in that community, and when they was spitting on my kids, I

22   never said nothing.

23           CHAIRMAN DRIGERT:  Ma'am?

24           MS. WISE:  I was there for twelve years.  No, hear me

25   out.  I was there for twelve years and never had a violation.

1    When my house burnt, do you think it's my fault that my house

2    burnt?  It's not my fault that my house burnt.

3              I have insurance money.  He's not giving me the sixty

4    days.  You gave me sixty days here.  I deserve the sixty days,

5    and if he's going to refuse thirty days and the thirty --

6              I've been there all week last week trying to get an

7    inspection.  So all I'm asking you is to just stick with my

8    original plan and my house will be in order.

9              CHAIRMAN DRIGERT:  Okay, I've got an idea.  I've got

10   an idea.  I've got an idea.

11             MS. WISE:  I've got a legal paper here to prove what

12   I'm saying.

13             BOARD MEMBER SHERR:  They're not going to give her a

14   permit.

15             CHAIRMAN DRIGERT:  Huh?

16             BOARD MEMBER SHERR:  They're not going to give her a

17   permit, so why bother.

18             CHAIRMAN DRIGERT:  Listen, listen.  It's not our job.

19   That's their job.

20             BOARD MEMBER CHARLAND:  Right.

21             MS. WISE:  By law they have to give me a permit.

22             CHAIRMAN DRIGERT:  It says right here that you have

23   sixty days to complete from the previous order.

24             BOARD MEMBER SHERR:  She said she had thirty days to

25   renew.

1      CHAIRMAN DRIGERT:  Thirty days to renew when she

2  applied for that.  I don't care.  We'll give the sixty days,

3  thirty days from today; okay?  We give her the thirty days, but

4  we'll modify it by putting in if it isn't finished in thirty

5  days, then the County will issue a demolition order and the

6  County will take care of it.

7      MS. WISE:  That's fair enough.

8      CHAIRMAN DRIGERT:  And the County will take care of it

9  with a demolition order, and any, any costs of demolition will go

10  on the lot as a lien; okay?

11      MS. WISE:  That's fair because I have construction

12  waiting.  I have $70,000 waiting to rebuild this house.

13      CHAIRMAN DRIGERT:  That will solve everything.

14      MS. WISE:  Se can't just come and come and take my

15  order of last month.  I should have been here.  I'm sorry.  I

16  have an order.

17      BOARD MEMBER SHERR:  Sit down.

18      CHAIRMAN DRIGERT:  Everybody sit down.  We've heard

19  it.  We've heard the case.  We're done.  Do I hear a motion?

20      BOARD MEMBER SHERR:  (ACTION)  I'd like to make a

21  motion to modify the order of the Broward County Unsafe Structure

22  Board issued at our last meeting on July 18, I believe --

23      MS. JOHNSON:  Yes.

24      BOARD MEMBER SHERR:  -- whereby the -- whereby Ms.

25  Wise had thirty days to renew her demolition permit and thirty

1    days after, that she had thirty additional days to demolish the

2    structure.

3           If that demolition is not completed within the thirty

4    days, this Board orders -- this Board is ordering that --

5           CHAIRMAN DRIGERT:  The County.

6           BOARD MEMBER SHERR:  -- the County issue a demolition

7    order immediately and proceed with demolition.

8           MS. WISE:  Now, is he going to give me a permit,

9    approved permit?

10           CHAIRMAN DRIGERT:  That's something that you work out

11    with the City of Lauderhill.

12           BOARD MEMBER SHERR:  We can't do anything for that.

13    That's the motion that we have on the table.

14           CHAIRMAN DRIGERT:  Do we hear a second?

15           BOARD MEMBER GREEN:  Second.

16           CHAIRMAN DRIGERT:  All those in favor?

17           ALL BOARD MEMBERS:  Aye.

18           CHAIRMAN DRIGERT:  All those opposed?  (There was no

19    response from the Board members.)

20           CHAIRMAN DRIGERT:  Motion carries.

21           MS. WISE:  Money talks.  Money talks.  It's a shame

22    what they're doing to me.

23           CHAIRMAN DRIGERT:  You got thirty days.

24           MS. WISE:  They're doing, what they're doing to me is

25    illegal, and nobody here cares.

1          CHAIRMAN DRIGERT:  It's thirty days you got.

2          MS. WISE:  I have been trying to get it.  He won't

3  give me a permit.  What good is your motion you just made?

4          CHAIRMAN DRIGERT:  Get a contractor.

5          MS. WISE:  I have a contractor.

6          CHAIRMAN DRIGERT:  Then he'll pull a permit for you.

7          MS. WISE:  He won't -- He just -- He wouldn't give

8  my contractor a permit.

9          CHAIRMAN DRIGERT:  Ma'am, then get an attorney.

10          BOARD MEMBER SHERR:  We can't do anything about it.

11          CHAIRMAN DRIGERT:  Nothing I can do about it.

12          COUNTY ATTORNEY KITCHNER:  The County has taken the

13  position you need to take it up now with the City.  Whatever you

14  need to do, you need to do with the City.

15          MS. WISE:  So I have to hire my attorney to take care

16  of it.

17          BOARD MEMBER SHERR:  Uh-huh.

18          MS. WISE:  No problem.  Can you make sure I get a copy

19  of the transcript?

20          THE COURT REPORTER:  Can you give me a call?

21          MS. WISE:  Thank you all for your help.

22          CHAIRMAN DRIGERT:  Thank you.

23          MS. WISE:  And somebody's been paid off 'cause that's

24  what they've been doing.  I'll wait until my insurance company

25  and everything because I'm (inaudible) in my neighborhood.  My

1    neighbor want my house to put a garden for his wife.  That's how

2    bad he want my house.

3            (Thereupon, the agenda item was concluded.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25