**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 15-60686-CIV-GAYLES**

**ROSE WISE,**

              **Plaintiff,**

      **v.**

**CITY OF LAUDERHILL,**

             **Defendants.**
_____/

**<u>ORDER</u>**

**THIS CAUSE** comes before the Court on Defendant City of Lauderhill's (the "City")

Motion for Summary Judgment [ECF No. 38], and Plaintiff Rose Wise's Motion to Remand,

which is contained within her opposition to the City's motion for summary judgment [ECF No. 43].

In this action, the Plaintiff brings claims for trespass and inverse condemnation relating to alleged

unlawful uses of her property and destruction of a house she owns by the City. The Court has care-

fully considered the briefs, the record, and the applicable law. For the reasons that follow, the

Plaintiff's motion to remand shall be denied and the City's motion for summary judgment shall

be granted.

**I.**      **BACKGROUND**

     **A.**     *Factual Background*

Plaintiff Rose Wise is the owner of a parcel of real property located at 8080 Northwest 44th

Court in the City of Lauderhill, Florida (the "Property"), which itself is a subdivision of Broward

County (the "County"). In 1997, Wise had a fire in a house on the Property, which she did not

completely repair until six years later. In 2004, the house was damaged by a second fire. Wise

made and collected on an insurance claim, which paid an amount sufficient to make repairs. In

December 2004, Wise obtained a demolition permit from the City. She then began tearing down and removing the damaged portions of the house. Between February and May 2005, the City conducted several inspections, before declaring the house an "unsafe structure" in May 2005. The matter was then referred to the Broward County Unsafe Structures Board (the "Board").[1]

On July 5, 2005, the Board issued a Notice of Violation for Unsafe Structures, which indicated that the house met the criteria for demolition under the governing provision of the Florida Building Code. On July 18, 2005, the matter went before the Board for a public hearing. The Board found that, pursuant to Florida Building Code § 111.2.2.1, "the cost of completion, alteration, repair and/or replacement of [the] unsafe structure exceed[ed] 50% of its value," and thus "such building shall be demolished and removed from the premise." Def.'s Mot. Ex. A. The Board issued an order stating that Wise had "30 days to renew demo permit. 30 days after demo, must submit plans for reconstruction. All must be completed within 60 days or demolish structure and remove debris from site." *Id.*

On August 15, 2005, Wise attempted to renew her permit with the City, but the City denied the permit, stating that her most recent permit had expired over 5 months prior, and denied Wise's request to reconsider that denial. On that same day, the Board held a second public hearing regarding the Property. On September 2, 2005, it issued a second order. It made the same findings as it did in the July 18 order and ordered that Wise had thirty days to renew her demolition permit; if she failed to do so, Broward County would issue a demolition order and proceed with the demolition.[2] Wise appealed the Demolition Orders on October 3, 2005, but abandoned the appeal. Def.'s

---

[1]  The Board is an entity established by Broward County Ordinance and comprised of nine members-at-large appointed by the Broward County Commission: a registered engineer, a registered architect, a general building contractor, an electrical contractor, a public contractor, an attorney, a real estate appraiser, a real estate property manager, and a citizen with experience and background in the social problems. *Unsafe Structures Board*, Broward Cnty. (Sept. 27, 2015), http://www.broward.org/intergovernmental/pages/unsafestructuresboard.aspx.

[2]  The Court will refer to the July 18, 2005, and September 2, 2005, Orders collectively as the "Demolition Orders."

Statement of Undisputed Material Facts ¶ B.[3] Wise never renewed her permit as ordered by the Board, so the City demolished the house on January 7, 2006.[4]

Prior to the demolition, while the house was still considered an unsafe structure, Wise alleges that she received a call from a neighbor who informed her that the City was conducting SWAT training on the Property. She also alleges that, during this same time, the City had "plans to construct a street wall" along 44th Street, which "would have encroached on [her] property." Am. Compl. ¶ 21.

### B.   *Procedural History*

Wise filed an action in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, on March 12, 2007. She alleged that the City violated her state procedural due process rights by wrongfully demolishing her home. Notably, the parties have provided very little statements or evidence regarding what, if anything, transpired in the litigation over the previous eight years before Wise filed an Amended Complaint on March 23, 2015. In it, she alleged for the first time that the City violated her federal substantive due process rights. She also asserted a claim against the City for trespass, alleging that the City trespassed on her Property

---

[3]   Southern District of Florida Local Rule 56.1 requires that "[a] motion for summary judgment and the opposition thereto shall be accompanied by a statement of material facts as to which it is contended that there does not exist a genuine issue to be tried or there does exist a genuine issue to be tried, respectively," S.D. Fla. L.R. 56.1(a). A statement shall, *inter alia*, "[b]e supported by specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court." *Id.* R. 56.1(a)(2). Furthermore, a statement of material facts submitted in opposition to a motion for summary judgment "shall correspond with the order and with the paragraph numbering scheme used by the movant." *Id.* R. 56.1(a). Local Rule 56.1(b), which governs the effect of failure to controvert a statement of undisputed facts, provides: "All material facts set forth in the movant's statement filed and supported as required above will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record." *Id.* R. 56.1(b).

The City filed a Statement of Undisputed Material Facts, incorporated into its motion for summary judgment as Part III, which the Court finds is supported as required and substantially complies with all requirements of Local Rule 56.1. Wise filed no statement in response in conjunction with the filing of her opposition to the motion for summary judgment. Therefore, pursuant to Local Rule 56.1(b), all facts contained in the City's Statement are hereby deemed admitted. For ease of reference the Court cites the City's Statement as a separate document.

[4]   The record is unclear as to whether the Board or the County issued another order specifically ordering the demolition at that time after Wise failed to comply with the Demolition Orders. But because Wise has not raised in her opposition an argument that the Board or the County *did not* issue such an order or that the City acted *ultra vires* in demolishing the structure on its own accord without instruction or authorization from the Board or the County, the Court concludes that there is no genuine issue as to whether such an order was issued.

when it allowed the SWAT team to use the Property as a training ground and when it entered onto the Property to demolish the house. And she asserted an inverse condemnation claim against the City, arising from the demolition.

The City removed the case to this Court on April 3, 2015. On October 8, the Court granted the City's motion to dismiss Wise's substantive due process claim, and denied the motion as to the trespass and inverse condemnation claims. After the close of discovery, the City filed the instant motion for summary judgment on May 19, 2016. Within her opposition to that motion, Wise moved to remand this case to state court.

## II.   MOTION TO REMAND

At the outset, the Court addresses Wise's motion to remand. She seeks remand pursuant to 28 U.S.C. § 1367(c)(3), arguing that the only claim over which this Court had original jurisdiction (the federal substantive due process claim) has been dismissed, leaving only state claims that should be adjudicated in the first instance by the state court.

"The doctrine of supplemental jurisdiction . . . permits 'federal courts to decide certain state-law claims involved in cases raising federal questions' when doing so would promote judicial economy and procedural convenience." *Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 530 (11th Cir. 2015) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 348-49 (1988)). This doctrine, codified at 28 U.S.C. § 1367, "grants federal courts the power to exercise jurisdiction over claims 'that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *Id.* at 531 (quoting 28 U.S.C. § 1367(a)). While Section 1367 "mandates that district courts—at least initially—exercise jurisdiction over those supplemental claims that satisfy the case or controversy requirement," *id.*, district courts have the authority to dismiss state law claims if, *inter alia*, "the district court has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3).

The U.S. Supreme Court has stated that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), but this rule is not mandatory: "The statement simply recognizes that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness, and comity— will point toward declining to exercise jurisdiction over the remaining state-law claims," *Cohill*, 484 U.S. at 350.

Wise contends that the case should be remanded because "[t]his case has progressed little since its commencement almost one year prior." Pl.'s Opp'n at 9. But this contention is, at least, misguided and, at most, disingenuous. This case has been proceeding before this Court for more than a year. The Court has ruled on a substantive motion to dismiss, the parties have undergone the entirety of the discovery period, interrogatories have been exchanged, the plaintiff's deposition has been taken, and trial is set to begin in approximately two months. This alone militates against remand. *Compare Casey v. City of Miami Beach*, 805 F. Supp. 2d 1361, 1362 (S.D. Fla. 2011) (denying remand where the court was "already familiar with this case" and had "issued a substan- tive ruling on the motion to dismiss," where discovery had closed, and where the case was "on the eve of trial"), *with Clarke v. Two Is. Dev. Corp.*, No. 15-21954, 2016 WL 659580, at *3 (S.D. Fla. Feb. 18, 2016) (remanding case where the pleadings were unsettled, a motion to dismiss and motion to strike were still pending, and the court had not expended a significant amount of judicial labor or time in the case). What's more, the claims in this action have been unchanged since October 8, 2015, when the Court dismissed Wise's sole federal claim; from that point forward, all that remained were the state law trespass and condemnation claims. Yet Wise has provided no explanation as to why she has chosen her opposition to the City's motion for summary judgment to move for remand, rather than at any other point over the previous eight months.

The Court has considered the relevant factors and finds that they weigh heavily against remand. Most critically, remanding the case at this time would be extraordinarily unfair to the City. This case has been pending, in some form or another (and in some *forum* or another), for nearly a decade. Requiring the City, this close to trial, to restart the litigation yet again would be tantamount to penalizing it for Wise's failure to request remand sooner. The Court will not permit this and shall, therefore, retain jurisdiction over this action. Accordingly, Wise's motion to remand is denied.

## III.    MOTION FOR SUMMARY JUDGMENT

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. —, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)) (internal quotation marks omitted). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004).

"Where the material facts are undisputed and all that remains are questions of law, summary judgment may be granted." *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d 1122, 1138 (11th Cir. 2016). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on

6

a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

### A.    *Statute of Limitations*

The Court first addresses the City's argument that Wise's trespass and inverse condemnation claims are time barred.

Both trespass and inverse condemnation are subject to four-year statutes of limitations. Fla. Stat. §§ 95.11(g) & (p); *see also New Testament Baptist Church Inc. v. Fla. Dep't of Transp.*, 993 So. 2d 112, 113 (Fla. 4th DCA 2008). According to the Amended Complaint, the trespass claim arises from the SWAT team's alleged use of Wise's Property as a training ground and from the demolition of the house, whereas the inverse condemnation claim arises only from the demolition of the house. All of these events, Wise admits, occurred on or before the date of the demolition in January 2006. Wise Dep. at 45:24-46:2, 46:8-10. Therefore, under a plain reading of the statute of limitations, the claims for trespass and inverse condemnation would have to have been filed by January 2010. Wise did not amend her complaint to add these claims until April 2015.

But Wise contends that her claims survive through operation of the "relation back" doctrine. Under this doctrine, "[w]hen the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleadings, the amendment shall relate back to the date of the original pleading," and thereby avoid a statute of limitations bar. Fla. R. Civ. P. 1.190(c). According to Florida's Third District Court of Appeal, when determining whether an amendment relates back to the original complaint:

> the proper test . . . is not whether the cause of action stated in the amended pleading is identical to that stated in the original (for in the strict sense almost any amendment may be said to be a change of the original cause of action), but whether the

pleading as amended is based upon the same specific conduct, transaction, or occurrence between the parties upon which the plaintiff tried to enforce his original claim. If the amendment shows the same general factual situation as that alleged in the original pleading, then the amendment relates back—even though there is a change in the precise legal description of the rights sought to be enforced, or a change in the legal theory upon which the action is brought.

*Mender v. Kauderer*, 143 So. 3d 1011, 1014 (Fla. 3d DCA 2014) (citation omitted). That court has also explained that the test to apply is "whether the original pleading gives fair notice of the general fact situation out of which the claim or defense arises," and has stated that the relation back doctrine "is to be applied liberally to achieve its salutary ends." *Flores v. Riscomp Indus., Inc.*, 35 So. 3d 146, 148 (Fla. 3d DCA 2010) (citations and internal quotation marks omitted); *see also Caduceus Props., LLC v. Graney*, 137 So. 3d 987, 992 (Fla. 2014) ("[R]ule 1.190(c) is to be liberally construed and applied.").

Here, Wise's original Complaint, which claimed only a deprivation of state procedural due process, alleged the following, in pertinent part:

> 7.    Plaintiff applied for a building permit from the City of Lauderhill in December, 2004 and was granted the permit on December 10, 2004.
>
> 8.    Under the July 18, 2005 order, plaintiff had until August 15, 2005, to renew her permit and until September 18, 2005 to submit plans for reconstruction.
>
> 9.    Plaintiff duly applied for said permit which was wrongfully denied by the defendant City of Lauderhill. It was arbitrary and capricious to deny her this permit.
>
> 10.   Plaintiff had complied with the order at the time and requested that the defendant reconsider its denial of the permit. However, the request to reconsider was denied and the house was demolished on or about January 7, 2006. . . .
>
> 14.   As a result of the defendant's wrongful destruction of her home, plaintiff has suffered damages.

Compl. ¶¶ 7-10, 14. Wise's Amended Complaint added claims for state and federal substantive due process (which have already been dismissed), trespass, and inverse condemnation. Regarding her trespass claim, she alleged that "Defendant trespassed on Plaintiff's property when it allowed its SWAT team to use Plaintiff's property as a training ground. Further, Defendant trespassed on

the Property when it demolished the house." Am. Compl. ¶ 35. Regarding her inverse condemnation claim, she alleged that "Defendant's demolishing of the house in order to utilize the Property for its own use has deprived [and] denied the Plaintiff . . . substantially all economic, beneficial, and productive use of the Property." *Id.* ¶¶ 41-42.

Given the liberal construction the Court must give the relation back doctrine, the Court easily finds that the trespass and inverse condemnation claims ***arising from the demolition of the house***, while new legal theories, do relate back to the original Complaint. The original Complaint states explicitly that Wise suffered damages "[a]s a result of the defendant's wrongful destruction of her home." Compl. ¶ 14. The U.S. Supreme Court has held that amendments can relate back "even though the amendment invoked a legal theory not suggested by the original complaint." *Mayle v. Felix*, 545 U.S. 644, 655 (2005). Thus, the Plaintiff's claims based on these facts are not barred by the statute of limitations.

The same cannot be said, however, for the trespass claim arising from the City's alleged use of the Property as a SWAT training ground. While the original Complaint gives fair notice to the City of the general fact situation vis-à-vis the permitting process and the demolition of the house, it gives no notice whatsoever regarding SWAT training activity. This event is in no way "based upon the same specific conduct, transaction, or occurrence between the parties upon which the plaintiff tried to enforce [her] original claim," *i.e.*, that she was deprived of due process because her request for a permit was denied and her house was demolished. *Mender*, 143 So. 3d at 1014. This trespass claim in this regard, therefore, does not relate back to the original Complaint, and because the Amended Complaint was filed more than five years after the four-year statute of limitations had run, it is barred by the statute of limitations. Accordingly, the City's motion for summary judgment on the Plaintiff's trespass claim, to the extent it arises from the alleged

SWAT activity, is granted.[5]

## B.   *Inverse Condemnation*

### 1.   **Failure to Exhaust**

The City argues that it is entitled to summary judgment on Wise's inverse condemnation claim, first, because she failed to exhaust legal and administrative remedies by abandoning her appeal of the Board's Demolition Orders. The Court notes that Wise has wholly failed to respond to this argument in her opposition brief, thereby conceding the argument. *See Anderson v. Branch Banking & Trust Co.*, 119 F. Supp. 3d 1328, 1345 (S.D. Fla. 2015) (citing *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) (Posner, J.) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. [The court] will not do his research for him." (citation and internal quotation marks omitted))).

Notwithstanding Wise's failure to respond, the Court has dutifully considered the relevant statutory provisions and agrees with the City's argument. In 1971, the Florida Legislature announced that the South Florida Building Code would "apply to all municipalities and unincorporated areas of Broward County, Florida." 1971 Fla. Laws ch. 71-575. On January 11, 2005, Broward County enacted Ordinance No. 2005-02, which updated the name of this authority under which the Board heard cases from the "South Florida Building Code" to the "Florida Building Code." For the entire period of time that it has applied in Broward County, the Building Code has provided that "[a]ny person aggrieved by a decision of the Unsafe Structures Board may seek judicial review of that decision in accordance with the Florida Appellate Rules." *E.g.*, S. Fla. Bldg.

---

[5]   The Court cannot discern whether Wise intended to include the "44th Street Wall Project" as an alternative basis for an inverse condemnation claim, given that she alleged no facts pertaining to this project other than that the City "had plans to construct a street wall on 44th Street." Am. Compl. ¶ 21. If she did so intend, this claim fails for the same reason as the SWAT-related trespass claim: the event is not based on the same conduct, transaction, or occurrence as her original state procedural due process claim.

Code § 202.12 (1981); *compare* Fla. Bldg. Code: Broward Cnty. Amends. § 116.12 (2015), *with* S. Fla. Bldg. Code § 202.12 (1974). The pertinent "Florida Appellate Rule[]" of which the Florida Building Code speaks is Florida Rule of Appellate Procedure 9.100(c), which provides, in part, that a "petition to review quasi-judicial action of agencies, boards, and commissions of local government, which action is not directly appealable under any other provision of general law but may be subject to review by certiorari" "shall be filed within 30 days of rendition of the order to be reviewed." Fla. R. App. P. 9.100(c)(2); *see also Park of Commerce Assocs. v. City of Delray Beach*, 636 So. 2d 12, 15 (Fla. 1994) ("[D]ecisions of local governments on building permits, site plans, and other development orders . . . are quasi-judicial in nature and thus subject to certiorari review by the courts."); *Bd. of Cnty. Comm'rs v. Snyder*, 627 So. 2d 469, 474 (Fla. 1993) ("It is the character of the hearing that determines whether or not board action is legislative or quasi-judicial. . . . [J]udicial action results in the ***application*** of a general rule of policy." (emphasis in original)).

The Court finds that the Board's hearing and subsequent issuance of the Demolition Orders were quasi-judicial activities, because they involved a local government agency's application of the Florida Building Code criteria governing demolition to the Property. *See* Defs.' Mot. Ex. A. Thus, Wise did comply with the initial step toward exhaustion by appealing the Demolition Orders to the Seventeenth Circuit Court on October 3, 2005, *see* Def.'s Mot. Ex. C, but she later abandoned that appeal, *see* Def.'s Statement of Undisputed Facts ¶ B, and the appeal was dismissed in 2006, *see* Def.'s Mot. Ex. C. Because she did not see the appeal through to its natural conclusion, she therefore failed to exhaust her remedies at law and is not entitled to relief on her inverse condemnation claim. *Frye v. Miami-Dade County*, 2 So. 3d 1063, 1064 (Fla. 3d DCA 2009).

### 2.      Regulatory Taking

Even if Wise ***had*** complied with her duty to exhaust, her inverse condemnation fails all the same because the Court finds, as a matter of law, that the City's conduct does not constitute a

taking. "Inverse condemnation is a cause of action by a property owner to recover the value of property that has been *de facto* taken by an agency having the power of eminent domain where no formal exercise of the power has been undertaken." *Osceola County v. Best Diversified, Inc.*, 936 So. 2d 55, 59-60 (Fla. 5th DCA 2006). So, for a plaintiff to establish a claim for inverse condemnation, she must first establish that a regulatory taking has occurred. Whether she met this requirement "is a question for the court in an inverse condemnation case." *Fla. Dep't of Agric. & Consumer Servs. v. Mendez*, 126 So. 3d 367, 375 (Fla. 4th DCA 2013) (citing *Dep't of Agric. & Consumer Servs. v. Mid-Fla. Growers, Inc.*, 521 So. 2d 101, 104 (Fla. 1988) ("[T]he trial judge in an inverse condemnation suit is the trier of all issues, legal and factual, except for the question of what amount constitutes just compensation.")).

The Takings Clause of the Fifth Amendment to the U.S. Constitution, incorporated against the States by the Fourteenth Amendment's Due Process Clause, provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. Similarly, Article X of the Florida Constitution provides, "No private property shall be taken except for a public purpose and with full compensation . . . ." Fla. Const. art. X § 6(a). In Florida, a "taking" occurs where regulation deprives an owner of all or substantially all economically beneficial or productive use of the property alleged to have been taken. *Tampa-Hillsborough Cnty. Exp'y Auth. v. A.G.W.S. Corp.*, 640 So. 2d 54, 58 (Fla. 1994); *see also City of Key West v. Berg*, 655 So. 2d 196, 196 (Fla. 3d DCA 1995) (per curiam) (explaining that a plaintiff, as a "prerequisite showing" to establish a regulatory taking claim, must establish that the regulation has deprived her of all or substantially all economically beneficial use of the property), *superseded by rule on other grounds as stated in Osceola County v. Best Diversified, Inc.*, 830 So. 2d 139 (Fla. 5th DCA 2002); *accord Decker v. Citrus County*, — F. Supp. 3d —, 2016 WL 1627109, at *3 (M.D. Fla. Apr. 25, 2016) ("To determine whether a government regulation of land use amounts to a taking of property, a court must

determine whether the government action deprived the owner of all [or substantially all] economically beneficial use of the land." (citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992))).

The regulation need not be permanent; a regulation may effect a temporary taking on an owner's land. *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 335 (2002). But the temporary nature of the regulation does not alter the requirement that it must still "deny a landowner all [or substantially all] use of his property" for it to constitute a "taking." *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 318 (1987); *see also, e.g.*, *Keshbro, Inc. v. City of Miami*, 801 So. 2d 864 (Fla. 2001) (holding that a temporary closure of a hotel and apartment by city nuisance abatement boards for drug- and prostitution-related activities was a compensable regulatory taking under the "economically beneficial use" standard outlined in the Supreme Court's decision in *Lucas*).

Wise testified that she still owns the Property, *see* Wise Dep. at 59:21-25, and it is undisputed that the Property was subject to no further regulation by the City subsequent to the demolition. Moreover, the City contends that nothing prevented Wise from building upon the Property after the unsafe structure was demolished and removed. Wise counters by arguing that she was "deprived of the use of her property because the costs associated with the demolishing the structure [sic] and reconstruction of the structure as a whole was substantially more expensive that [sic] simply repairing the fire damaged sections of the structure." Pl.'s Opp'n at 11. She further states that her "insurance company did not provide [her] with sufficient funds to build a new structure from the ground up, but simply repair the damaged portions of the structure." *Id.*

Through these arguments, Wise, in effect, concedes that she was not deprived of substantially all economically beneficial use of the Property. Takings law is not concerned with the expense of bringing a property back to its previous value before the application or imposition of

government regulation, but rather only with determining whether the regulation has resulted in a total deprivation. *See City of Jacksonville v. Smith*, 159 So. 3d 888 (Fla. 1st DCA) ("[N]o compensation is allowed absent proof of a total taking/deprivation of a property right."), *rev. granted*, 173 So. 3d 965 (Fla. 2015). A taking does not occur when the regulation prevents a property from achieving its maximum economic potential, because "an otherwise valid exercise of the police power is not a taking simply because the regulation deprives the owner of the most beneficial use of his or her property." *Rymer v. Douglas County*, 764 F.2d 796, 801 (11th Cir. 1985);[6] *see also Nasser v. City of Homewood*, 671 F.2d 432, 438 (11th Cir. 1982) (stating that a "severe decrease" in a property's value also does not "measure[] up to an unlawful taking").

Wise does not seem to dispute that the City's demolition pursuant to the Board's Orders was a valid exercise of its police power. She posits, however, that the demolition still constituted a taking. In this regard, Wise correctly identifies "the settled proposition that a regulation or statute may meet the standards necessary for exercise of the police power but still result in a taking." *Mid-Florida Growers*, 521 So. 2d at 103. That said, the Florida Supreme Court has cautioned against conflating of an exercise of the state police power with a taking under the power of eminent domain. *See City of Hollywood v. Mulligan*, 934 So. 2d 1238, 1248 n.7 (Fla. 2006) (stating that a vehicle seized pursuant to a municipal vehicle impoundment ordinance is temporarily taken under the municipality's police powers, not under eminent domain); *see also Bennis v. Michigan*, 516 U.S. 442, 444 (1996) (holding that a vehicle seized and forfeited for its use in violation of Michigan indecency laws was not a "taking" because the vehicle was seized pursuant to the state's police power, not under eminent domain). And while it is true that a plaintiff may be financially

---

[6] "The term 'police power' connotes the time-tested conceptional limit of public encroachment upon private interests." *Goldblatt v. Town of Hempstead*, 369 U.S. 590, 594 (1962) (citation and internal quotation marks omitted). While courts have generally refrained from announcing a specific definition of the term, a lawmaking body, under its police power "has broad authority . . . to enact laws which 'promote the public health, safety, morals, and general welfare' of its citizens." *G.W. v. State*, 106 So. 2d 83, 85 (Fla. 3d DCA 2013) (quoting *Div. of Pari-Mutuel Wagering, Dep't of Bus. Regulation v. Fla. Horse Council, Inc.*, 464 So. 2d 128, 130 (Fla. 1985)).

harmed if a demolition of an unsafe and uninhabitable building occurs, "the law permits such harm when it results from a valid exercise of police power." *Dragomirecky v. Town of Ponce Inlet*, 882 So. 2d 495, 497 (Fla. 5th DCA 2004) (citing *Thomas v. City of West Palm Beach*, 299 So. 2d 11 (Fla. 1974)). This is so because "regulation under the police power will always interfere to some degree with property use," but "compensation must be paid only when that interference deprives the owner of substantial economic use of his or her property." *Joint Ventures, Inc. v. Dep't of Transp.*, 563 So. 2d 622, 625 (Fla. 1990); *see also Goldblatt v. Town of Hempstead*, 369 U.S. 590, 592 (1962) (upholding, as a valid exercise of police power, an ordinance that completely prohibited mining on property that had previously been devoted to mining); *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 390 (1926) (holding that the fact that a city suburb zoning ordinance would divert the industrial development of the city from the course it would follow without the ordinance did not render the ordinance unconstitutional); *Hadacheck v. Sebastian*, 239 U.S. 394, 411-13 (1915) (upholding ordinance prohibiting brick-making within a designated area, despite brick-maker's contentions that he could not carry on his business if the ordinance were upheld and that it "would be prohibitive from a financial standpoint" for him to transport the clay found on his property to a location where brick-making was permitted (internal quotation marks omitted)).

*       *       *

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, as the City has done here, the nonmoving party must "go beyond the pleadings and by [her] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (citation and internal quotation marks omitted). At trial, Wise would bear the burden of proving

that she was deprived of all or substantially all economically viable use of the Property. But she has responded to the City's contention that she cannot establish this element of her inverse condemnation claim with nothing more than conclusions and unsupported factual allegations, which are "legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citation and internal quotation marks omitted); *see also Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 483 F.3d 1265, 1273 (11th Cir. 2007) (stating that a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial" (citation omitted)).

In sum, "unless there is a deprivation of [all or] substantially all economic, beneficial or productive use of the property, inverse condemnation is not the remedy." *City of Pompano Beach v. Yardarm Rest., Inc.*, 641 So. 2d 1377, 1385 (Fla. 4th DCA 1994). Because there was no such deprivation here, there can be no claim. Accordingly, the City's motion for summary judgment on the Plaintiff's inverse condemnation claim is granted.

**C.    *Trespass***

Finally, the Court addresses the Plaintiff's trespass claim arising from the City's entry onto the Property to demolish the house. "Trespass to real property is the unauthorized entry onto another's real property." *Daniel v. Morris*, 181 So. 3d 1195, 1199 (Fla. 5th DCA 2015). The City argues that it is entitled to summary judgment because it was authorized to come onto the Property and demolish the unsafe structure, as ordered by the Board. *See* Def.'s Mot. Ex. A ("30 days to renew demo permit. If not, the County will issue a demolition o[r]der and proceed with the demolitio[n] with all expenses going on the lot as a Lien.").[7] Wise asserts that "[a]t no time was the Defendant authorized to enter [her] property for any reason," she "object[s] to" the Demolition

---

[7]    *See supra* note 4.

16

Orders (yet says nothing regarding the basis of her objections), and she contends that "[i]f it is determined that the orders are improper then the trespass is improper." Pl.'s Opp'n at 12.

The following statutory provisions and ordinances are instructive in resolving this issue:

(1) The Minimum Housing Code for Broward County, Florida, has been established by Broward County as "a means of protecting the health, welfare, and safety of the public by eliminating," *inter alia*, "unsafe structures." Broward County, Fla., Code of Ordinances art. IV § 5-53;

(2) The Minimum Housing Code applies to "[e]very structure or building in Broward County used, or intended to be used, in whole or in part as a single-family dwelling," each of which "shall conform to the requirements and minimum standards established by this article." *Id.* § 5-54;

(3) The Unsafe Structures Board is "authorized by the Board of County Commissioners . . . to enter such orders or decisions that are authorized under both the Florida Building Code and The Minimum Housing Code for Broward County, Florida. . . . Nothing contained in this article shall prohibit the County from enforcing its codes or ordinances by any other lawful means." *Id.* § 5-56(a);

(4) The Board is vested with several duties, "[i]n addition to the duties and powers specified in the Florida Building Code," including "[i]ssu[ing] such orders as may be necessary in order to enforce the standards established by this article." *Id.* § 5-56(b)(5);

(5) "Unsafe buildings or structures shall be demolished and removed from the premise concerned, or made safe, sanitary and secure in a manner required by the [governing Broward County] Building Official and as provided in this Code  . . . ." Fla. Bldg. Code: Broward Cnty. Amends. § 116.1.3;

(6) A building or structure shall be deemed unsafe when "[t]he building is partially destroyed." *Id.* § 116.2.1.2.3;

(7) "If the cost of completion, alteration, repair, and/or replacement of an unsafe building or structure or part thereof exceeds 50% of its value, such building shall be demolished and removed from the premise." *Id.* § 116.2.2.1;

(8) At a public hearing, held when the owner of or person responsible for an unsafe structure does not comply with the terms of a duly noticed Notice of Violation, the board may "modify, rescind, or uphold the decision . . . as recited in the Notice of Violation and may order the owner or persons responsible for the building or structure . . . to demolish the building or structure and remove the salvage, contends[,] debris and abandoned property from the premise, all within the time stipulated in the order by the Board." *Id.* § 116.10.2; and

(9) "If the order is to demolish the building or structure and to remove the salvage, contents, debris and abandoned property from the premise, and the owner or those responsible shall have failed to comply with such order, then the Building Official may do so thereafter through his or her employees . . . ." *Id.* § 116.10.5.

Considering these, the Court finds as a matter of law that the City was duly authorized by Broward

County to enter Wise's property for the limited purpose of demolishing an unsafe structure.

The Court further finds that there can be no genuine issue of material fact that Wise impliedly consented to the City's entry and demolition based on her failure to act in accordance with the Board's September 2005 Order. "[C]onsent is an absolute defense to an action for trespass," *Fla. Publ'g Co. v. Fletcher*, 340 So. 2d 914, 917 (Fla. 1976), which "may be implied from custom, usage or conduct," *Bos. Mfrs. Mut. Ins. Co. v. Fornalski*, 234 So. 2d 386, 387 (Fla. 4th DCA 1970) (citing *Prior v. White*, 180 So. 347 (Fla. 1938)). Such implied consent is "necessarily limited, however, to those acts that are within a fair and reasonable interpretation of the terms of the grant." *Id.* Here, Wise's house was declared an unsafe structure in violation of the Florida Building Code, the violation was noticed, two hearings were held, and two Orders were issued with findings that the house met the criteria for demolition. The September 2005 Order informed Wise that she had thirty days to demolish the structure or the County would issue a demolition order and proceed with the demolition itself. Wise did not comply with this order for over four months, at which point the County, in executing its own statutory authority, authorized the City to demolish the unsafe structure.

Because Wise failed to comply with the Demolition Orders, she impliedly consented to the City's entry for the specific purpose of demolishing the structure and removing the debris from the premises. The singular allegation of trespass remaining in this lawsuit is that the City entered onto her Property to demolish the house. *See* Am. Compl. ¶ 35. Wise admits that no trespasses occurred after the house was demolished in January 2006. *See* Def.'s Statement of Undisputed Material Facts ¶ F (citing Wise Dep. at 46:8-10). Thus, there can be no genuine dispute that the City conducted only "those acts that are within a fair and reasonable interpretation of the terms of the" implied consent in entering the Property, demolishing the structure, and removing the debris. *Fornalski*, 234 So. 2d at 387; *cf. Crowell v. Fla. Power Corp.*, 438 So. 2d 958, 958-59 (Fla.

18

2d DCA 1983) (finding a genuine issue of material fact as to whether utility company's agents violated the boundaries of an implied consent by "radically" and "improperly" trimming two of the plaintiffs' trees situated near the utility company's power lines, which resulted in one of the trees falling onto the plaintiffs' house). To hold otherwise and say that this action by the City—enforcing Broward County Ordinances, the Florida Building Code, and the Minimum Housing Code subsequent to notice, two public hearings, and two Orders by the Unsafe Structures Board with which the Plaintiff refused to comply—gives rise to liability in tort for trespass would be a truly remarkable proposition. *See Trianon Park Condo. Ass'n v. City of Hialeah*, 468 So. 2d 912, 922 (Fla. 1985) ("Governments must be able to enact and enforce laws without creating new duties of care and corresponding tort liabilities that would, in effect, make the governments and their taxpayers virtual insurers of the activities regulated.").

At bottom, the Court concludes that the City was authorized by law and by implied consent to enter the Property to demolish the unsafe structure. Accordingly, the City's motion for summary judgment on the Plaintiff's trespass claim is granted.

## IV.   CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that the Plaintiff's Motion to Remand [ECF No. 43] is **DENIED**, and the Defendants' Motion for Summary Judgment [ECF No. 38] is **GRANTED**.

This action is **CLOSED** and all pending motions are **DENIED** as moot. Pursuant to Federal Rule of Civil Procedure 58, final judgment shall be entered separately.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 13th day of July, 2016.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE